IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|

ISRAEL SWAREY, et al.                       :

                                            :

     v.                                     :   Civil Action No. DKC 11-3615

                                            :

DESERT CAPITAL REIT, INC.,
et al.                                      :


**MEMORANDUM OPINION**

Numerous motions are pending and ready for review in this civil RICO case, including:  a motion to strike Defendant Kerry Stephenson's affirmative defenses filed by Plaintiffs Israel Swarey and Linda Swarey (ECF No. 35); motions to dismiss Plaintiffs' complaint filed by Defendants Todd Parriott and Phillip Parriott (ECF Nos. 38, 40); a motion to set aside the clerk's entries of default filed by Defendants Nick Andrews and N. Andrews, LLC (ECF No. 43); and motions to withdraw as counsel filed by the attorney for Defendants Todd and Phillip Parriott (ECF Nos. 52, 53).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, the motion to set aside the defaults entered against Defendants Nick Andrews and N. Andrews, LLC, will be granted; the motion to strike Defendant Stephenson's affirmative defenses will be denied as moot; the motions for leave to withdraw as counsel will be granted; the

motions to dismiss will be granted in part and denied in part; and the case will be remanded to state court.

## I.  Background

### A.  Factual Background

Plaintiffs purport to be the victims of several real estate investment scams designed and executed by Defendants.  Viewing the allegations in the complaint (ECF No. 2) in the light most favorable to Plaintiffs, the schemes occurred as follows.

While attending a financial planning seminar on "how to invest in real estate tax sales to support a fixed income" (*id.* ¶ 124), Mr. Swarey was solicited by a company called Strategic Wealth Management to participate in certain investment projects.[1] Strategic Wealth Management and its affiliates ultimately introduced Mr. Swarey to two subsets of Defendants who together conspired to defraud the Swareys of their life savings.  One subset of Defendants consists of Todd Parriott, Phillip Parriott, Kerry Stephenson, and Desert Capital REIT, Inc. (collectively, "the Desert Capital Defendants"), who induced the Swareys to invest substantial sums of money in sham investment vehicles.  The other subset of Defendants consists of individuals and entities associated with First Universal Lending LLC:  Sean Zausner, David Zausner, David Feingold, Nick Andrews

---

[1] Strategic Wealth Management is not a party to this action.

and N. Andrews, LLC (collectively, "the FUL Defendants").[2] The FUL Defendants allegedly induced the Swareys' procurement of a $2 million loan that funded the Plaintiffs' participation in the investment opportunities presented by the Desert Capital Defendants.

The Desert Capital Defendants executed three distinct fraudulent schemes through which they received money from the Swareys *via* undercapitalized shell companies. In March 2008, the Desert Capital Defendants collectively induced Mr. Swarey to enter into an agreement that created Pebble Creek JV, LLC ("Pebble Creek"), a sham entity that was never adequately capitalized and had only one member: R&D Properties, LLC, a company owned and managed by Defendant Stephenson. The operating agreement for Pebble Creek stated that the purpose of the venture was to develop, construct, and sell 47 lots of property located in Nevada for profit ("the Pebble Creek Project"). Defendant Stephenson requested that Mr. Swarey wire $440,000 to fund his participation in the Pebble Creek Project. Stephenson represented that these funds would be used to purchase property in which Mr. Swarey would acquire an ownership interest. The Desert Capital Defendants collectively represented to Mr. Swarey that homes would be built on the

---

[2] First Universal Lending, Inc. is not a party to this action.

purchased lots within six months and that he would receive payments as the homes were sold, amounting to a 20% rate of return on his original investment. On March 31, 2008, Mr. Swarey wired the funds from his Bank of America checking account in Maryland to Pebble Creek. At some point thereafter, Stephenson and Todd Parriott represented to Mr. Swarey that the 47 lots in Las Vegas had been acquired with his $440,000 investment and also arranged for Mr. Swarey to speak with a builder about the "fake project." (*Id.* ¶ 83). Todd Parriott also personally assured Mr. Swarey that he had never lost any money for his investors in the past. Despite these representations, no lots were ever purchased with Mr. Swarey's investment of $440,000; no homes were built; Mr. Swarey never received any interest payments from the Pebble Creek Project; and Mr. Swarey did not recover his initial investment.

In the second alleged scheme, the Desert Capital Defendants convinced Mr. Swarey to enter into another venture, Ann Road Industrial 007, LLC. Per the terms of the entity's operating agreement, the purpose of the venture was to (1) acquire a specific plot of land located on Ann Road and (2) enter into a joint venture with a shell company of the Desert Capital Defendants to develop and sell the property for a profit ("the Ann Road Project"). The Desert Capital Defendants collectively informed Mr. Swarey that he would receive a full return of his

4

investment within six months, as well as a 20% rate of return on the principal amount.   On June 5 and June 12, 2008, Mr. Swarey wired a combined sum of $1,150,000 from his Bank of America account in Maryland to Ann Road Industrial 007, LLC.   As with the Pebble Creek Project, no property was acquired with Mr. Swarey's investment.   Instead, from 2008 through 2009, the Desert Capital Defendants, and Todd Parriott in particular, gave conflicting information in response to Mr. Swarey's inquiries about the status of the Ann Road Project and the use of his funds.

In the third alleged scheme, Mr. Swarey invested approximately $2 million in "the Mid-Bar Property Project" in June of 2008.   Todd Parriott and Desert Capital REIT, Inc. ("Desert Capital"), represented to Mr. Swarey that his investment would be used to purchase certain land that would be developed into a high-rise condominium building.   Todd Parriott and Desert Capital also promised Mr. Swarey that he would receive a return of no less than 20% on top of his principal investment and a first deed of trust in the land as security for his investment if the project failed.   Despite these assurances, Mr. Swarey was "nowhere close to a senior creditor to the project." (*Id.* ¶ 57).   Rather, the Mid-Bar Property "carried a $31,500,000.00 first mortgage arranged by the Desert Capital Defendants." (*Id.* ¶ 58).   Specifically, Desert Capital

concealed its role as a lender for the project by listing one of the Desert Capital Defendants' alter egos on the security instrument.  By deliberately arranging for the Mid-Bar Property Project to remain under-funded, the Desert Capital Defendants ultimately were able to foreclose on the property, "acquiring the land at a vastly discounted value and laundering away any lost equity."  (*Id.* ¶¶ 58-60).  The Desert Capital Defendants then transferred ownership of the Mid-Bar Property to MidBlue, LLC, an entity that had a single officer:  Consolidated Mortgage, LLC, which is the purported alter ego of Todd and Phillip Parriott.  Although Mr. Swarey repeatedly sought information about how the funds he invested in the Mid-Bar Property Project were used throughout 2008 and 2009, all communications from Todd Parriott ended in the fall of 2009.

Mr. Swarey obtained some of the funds for his participation in the three alleged schemes by procuring a $2 million loan on May 22, 2008.  Defendant Andrews, on behalf of the FUL Defendants, contacted Mr. Swarey, "[s]eemingly out of the blue," and offered to "undertake" the loan for the funds Plaintiffs needed to participate in the Desert Capital Defendants' investment projects.  (*Id.* ¶¶ 128-29).  When Mr. Swarey expressed reluctance about pursuing the loan, the FUL Defendants began threatening and harassing Plaintiffs.  The FUL Defendants ultimately effected the loan by sending a notary to Plaintiffs'

hotel room the night before Mrs. Swarey was scheduled to undergo surgery at a Baltimore hospital. The notary procured Mrs. Swarey's signature on a power of attorney form in favor of Mr. Swarey, even though, "[d]ue to her condition [renal cell carcinoma] and her treatments, Mrs. Swarey was not legally competent to execute any legally binding documents." (*Id.* ¶ 142). The notary then arranged for Mr. Swarey to sign the closing documents.

Upon receiving copies of the loan documents in September 2008, Plaintiffs learned that the loan application was "vastly different" from that which had been discussed over the telephone with Mr. Andrews and included incorrect statements regarding Plaintiffs' income and net worth. (*Id.* ¶ 148). "Andrews represented to Mr. Swarey that he was applying for a conventional, fixed rate loan based on the Swareys' true financial data . . . [but] Andrews and the FUL Defendants applied the Swareys for a subprime loan with an adjustable-rate that the Swareys had no hope of repaying based on their fixed income." (*Id.* ¶ 155).

### B.   Procedural Background

On May 18, 2011, Plaintiffs filed a 21-count complaint in the Circuit Court for St. Mary's County, Maryland. As against the FUL Defendants, Plaintiffs assert causes of action for: (1) mortgage fraud; (2) intentional infliction of emotional

7

distress; (3) violations of Md. Code Ann., Comm. Law § 12-127, and (4) elder abuse. (*Id.* ¶¶ 145-88). As against the Desert Capital Defendants, Plaintiffs assert causes of action for: (1) unjust enrichment, or, alternatively, breach of contract, for the Pebble Creek and Ann Road Projects; (2) unjust enrichment for the Mid-Bar Property Project; (3) fraud; (4) conversion; (5) embezzlement; (6) violations of the Maryland Consumer Protection Act; and (7) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.* ¶¶ 145-325). As against all defendants, Plaintiffs allege counts for conspiracy to commit fraud and common law indemnity. Plaintiffs seek actual and statutory damages in an amount not less than $3.79 million; treble damages under RICO in an amount not less than $11.37 million; indemnification for claims against the Swareys seeking repayment of the allegedly fraudulent mortgage loan; punitive damages; damages for pain and suffering; and attorneys' fees and court costs. (*Id.* at 50-51).

On December 15, 2011, Defendants Todd and Phillip Parriott removed the case to this court, citing federal question jurisdiction based on the RICO count and supplemental jurisdiction over the state law claims. (ECF No. 1 ¶¶ 13-16). An automatic stay was entered as to Desert Capital because of its pending bankruptcy case. (ECF No. 4). On January 18, 2012, the clerk entered defaults against Defendants Nick Andrews and

N. Andrews, LLC (together, "the Andrews Defendants") (ECF No. 30). On February 9, 2012, the clerk entered default against Defendant Sean Zausner (ECF No. 37). The Andrews Defendants filed a motion to vacate the defaults on February 22, 2012. (ECF No. 43). Plaintiffs filed a response (ECF No. 49), and the Andrews Defendants replied (ECF No. 54). Defendant Kerry Stephenson answered the complaint on February 1, 2012 (ECF No. 34), and Plaintiffs moved to strike Stephenson's affirmative defenses the very next day (ECF No. 35). Defendant Stephenson then filed an amended answer on February 23, 2012. (ECF No. 44). Defendants Todd and Phillip Parriott (together, "the Parriott Defendants") filed separate motions to dismiss on February 16, 2012 (ECF Nos. 38, 40), and those motions were fully briefed (ECF Nos. 48, 51, 56, 57).[3]

## II.  The Andrews Defendants' Rule 55(c) Motion

### A.  Standard of Review

Pursuant to Fed.R.Civ.P. 55(c), a court may "set aside an entry of default for good cause." Because the Fourth Circuit

---

[3] John Carpenter, Esq., also filed motions seeking leave to withdraw his appearance on behalf of Phillip Parriott and Todd Parriott. (ECF Nos. 52, 53). Pursuant to Local Rule 101.2.a, an attorney representing an individual may withdraw his appearance with leave of the court if "appearance of other counsel has been entered." Here, Paul J. Doughtery, III, Esq., and Andrew M. Lagomarisino, Esq., have entered appearances on behalf of both Phillip Parriott and Todd Parriott. (ECF Nos. 58, 62). Because both of the Parriott Defendants have retained new counsel, leave will be granted to Mr. Carpenter to withdraw his appearance on behalf of Todd and Phillip Parriott.

has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), a motion to set aside a default must be "'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments,'" *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). As a result, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130.

"Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). To establish a meritorious defense, the moving party should proffer evidence that would permit a finding for the defaulting party. *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). The following factors should also be considered in considering a Rule 55(c) motion: "the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006).

**B.   Analysis**

The Andrews Defendants correctly contend that, pursuant to the *Payne* factors, good cause exists to set aside the clerk's entries of default.[4]   First, the Andrews Defendants acted with reasonable promptness in seeking to set aside the defaults.   The defaults were entered on January 18, 2012.   (ECF No. 30).   On February 22, 2012 – just over one month later – the Andrews Defendants moved to vacate the defaults (ECF No. 43), a period of time that is well within the bounds of what constitutes reasonable diligence.   *See, e.g.*, *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F.Supp.2d 712, 718 (D.Md. 2001) (finding that, based on the circumstances of the case, defendants "acted reasonably promptly" in moving to set aside the default approximately one month after it was entered).   What is more, the Andrews Defendants apparently contacted counsel for Plaintiffs on or about February 7, 2012, to seek their consent for filing a motion to set aside the defaults, and Plaintiffs responded a week later on February 14, 2012 by refusing to consent to the proposed motion.   (ECF No. 43, at 2).   Based on

_____

[4] Because the Andrews Defendants demonstrate good cause for setting aside the defaults and indicate their willingness to "defend Plaintiffs' claims on the merits" (ECF No. 54, at 2), their arguments regarding improper service need not be reached. *See, e.g.*, *Chaffin v. NiSource, Inc.*, No. 3:08-0870, 2008 WL 4811028, at *3 (S.D.W.Va. Nov. 3, 2008) (declining to reach a defendant's arguments regarding improper service because, even if service were proper, good cause existed to lift the default).

these circumstances, the Andrews Defendants acted with reasonable promptness by filing their motion on February 22, 2012.

Second, the Andrews Defendants present meritorious defenses to Plaintiffs' claims.  Initially, the Andrews Defendants note that the mortgage transaction forming the basis for Plaintiffs' claims occurred "more than three years ago" (ECF No. 43-1, at 1), suggesting that some or all of the Swareys' claims are barred by the three-year statute of limitations for civil actions in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The Andrews Defendants also observe that the "bizarre patchwork of allegations" asserted by Plaintiffs in the complaint "will likely fail the *Twombly/Iqbal* tests." (ECF No. 54, at 3 n. 1).  Resolving all doubts in favor of the Andrews Defendants, this statement presents a meritorious defense because, if believed, it would entitle the Andrews Defendants to an order dismissing Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).

In addition, other than vague references to the Andrews Defendants' "excessive and unjustified delay" (ECF No. 49, at 3), Plaintiffs fail to show with specificity how they would suffer prejudice if the defaults were set aside.  *See Wainwright's Vacations*, 130 F.Supp.2d at 720 (explaining that a plaintiff must offer specific ways in which it would be harmed

by re-opening a case rather than generic arguments regarding delay); *Colleton Preparatory*, 616 F.3d at 418 ("[D]elay in and of itself does not constitute prejudice to the opposing party."). As the Andrews Defendants point out, this action is still in its nascent stages. (ECF No. 43-1, at 12). Indeed, only one of the nine defendants has answered, no scheduling order has been issued, and no discovery has been taken. Given this posture, Plaintiffs would endure only the inconvenience "suffered by any party which loses a quick victory" if the defaults were set aside. *Augusta Fiberglass*, 843 F.2d at 812.

The remaining *Payne* factors also weigh in favor of setting aside the defaults. Plaintiffs do not offer any evidence of dilatory action by the Andrews Defendants, or that the Andrews Defendants (as opposed to their attorneys) are personally culpable for the delayed response. *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (explaining that this factor focuses on the *personal* responsibility of the party rather than the responsibility of the party's counsel). With respect to alternative sanctions, Plaintiffs argue that any order setting aside the defaults should require the Andrews Defendants to post a "reasonable" bond in the amount of $2,205,247.20, representing the amount of their indemnity claim. (ECF No. 49 at 2-3). Plaintiffs contend that a bond in this amount is necessary because the Andrews Defendants' delay has

prevented Plaintiffs from resolving their dispute with U.S. Bank – the owner of the Swareys' $2 million mortgage — in the case captioned *Swarey et al. v. Bayview Loan Servicing, et al.*, No. 10-cv-03552-PJM (D.Md.).   That case, however, has since been dismissed pursuant to a settlement agreement.   In light of the "broad discretion" afforded by Rule 55(c) to condition vacatur of a default on appropriate terms and conditions, *O.T. Africa Line v. Top Exp., Inc.*, No. 96-2533, 1997 WL 592856, at *1 (4th Cir. 1997), Plaintiffs' request will be denied.

In sum, good cause exists under Rule 55(c) to set aside the defaults.   Given this circuit's well-established preference for deciding cases on the merits, the Andrews Defendants' motion will be granted.

## III. Plaintiffs' Motion to Strike Stephenson's Affirmative Defenses

Plaintiffs' Rule 12(f) motion to strike the affirmative defenses asserted by Defendant Stephenson has been rendered moot by Stephenson's filing of an amended answer.

In his original answer filed on February 1, 2012, Stephenson asserted seven affirmative defenses in a conclusory manner without providing any factual support. (ECF No. 34, at 32).   Plaintiffs filed a motion to strike under Rule 12(f), contending that Rule 8 – as interpreted by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

14

(2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) – required Stephenson to go beyond mere labels and conclusions in pleading his affirmative defenses. (ECF No. 36, at 1-2). Instead of opposing Plaintiffs' motion to strike, Stephenson filed an amended answer on February 23, 2012, pursuant to Rule 15(a). (ECF No. 44).[5] In the amended answer, Stephenson provides factual allegations to support six of the defenses previously asserted. (*Id.* at 32-34).[6] Because Plaintiffs' motion to strike is premised on the argument that Stephenson's affirmative defenses are "wholly devoid of any factual content" (ECF 36, at 5), the amended answer renders Plaintiffs' Rule 12(f) motion moot, and it will be denied.

## IV. The Parriott Defendants' Motions to Dismiss

Defendants Todd and Phillip Parriott seek dismissal of Plaintiffs' complaint on three grounds: (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state a claim upon which relief can be granted. Each of these arguments will be addressed, in turn.

---

[5] Plaintiffs do not question the timing of Stephenson's filing of the amended answer, nor do they otherwise object to its substance.

[6] In his original answer, Stephenson asserted statute of frauds as an affirmative defense, but he does not raise it in his amended answer.

A.    **Personal Jurisdiction**

The first issue that must be decided is whether personal jurisdiction can be exercised over the Parriott Defendants "because the dismissal of a case on an issue relating to the dispute, such as a failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006) (citing *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." (internal quotation marks omitted)); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) ("The validity of an order of a federal court depends upon that court's having jurisdiction over *both* the subject matter *and* the parties.") (internal quotation marks omitted).

When personal jurisdiction over a nonresident defendant is challenged by a Rule 12(b)(2) motion, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted).  If jurisdiction turns on disputed

facts, the challenge may be resolved after a separate evidentiary hearing, or the ruling may be deferred pending the introduction of evidence at trial relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, a ruling is issued without conducting an evidentiary hearing and based solely on the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396. In deciding whether the plaintiff has proved a *prima facie* case, all reasonable inferences arising from the proof must be drawn in favor of the plaintiff, and all factual disputes must be resolved in his or her favor. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Under Rules 4(k)(1)(A) and (C) of the Federal Rules of Civil Procedure, a federal court may exercise jurisdiction over a defendant's person in the manner provided by state law or when otherwise authorized by federal statute. In this case, Plaintiffs assert that personal jurisdiction is proper based on both the federal RICO statute and the Maryland long-arm statute. (*See* ECF No. 48, at 1-8; ECF No. 51, at 1-19). The Parriott Defendants, in turn, contend that the Maryland long-arm statute does not authorize the exercise of personal jurisdiction over them and that Plaintiffs have not asserted a "colorable" RICO claim, precluding reliance on that statute's nationwide service

of process provision to establish *in personam* jurisdiction. (ECF No. 39, at 5-15; ECF No. 41, at 5-13). As will be discussed, because RICO provides a basis for exercising personal jurisdiction over the Parriott Defendants as to that count of the complaint, making it permissible to assert pendent personal jurisdiction as to Plaintiffs' state law claims at the threshold of this litigation, the parties' arguments with respect to the Maryland long-arm statute need not be reached at this time. *See, e.g.*, *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 271 (D.S.C. 1999) (declining to reach the "traditional personal jurisdiction analysis" where jurisdiction was proper under RICO).

As explained by the Fourth Circuit in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997), Congress enacted RICO as Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (1970). RICO prohibits various activities generally associated with organized crime. *See* 18 U.S.C. §§ 1963, 1964. In addition to criminal penalties, Congress also "granted a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of' the RICO provisions." *ESAB Grp.*, 126 F.3d at 626 (citing 18 U.S.C. § 1964(c)).

Section 1965(d) of RICO provides that "[a]ll other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person

18

resides, is found, has an agent, or transacts his affairs." The Fourth Circuit has construed section 1965(d) as "authoriz[ing] nationwide service of process and, thus, the exercise of personal jurisdiction in any district court." *D'Addario v. Geller*, 264 F.Supp.2d 367, 386 (E.D.Va. 2003) (citing *ESAB Grp.*, 126 F.3d at 626).[7]   Therefore, in this circuit, service of

---

[7] Although the federal courts of appeals agree that RICO provides for nationwide service of process, they are divided as to which subsection of the statute provides for such service. *See Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 548 (E.D.Va. 2009) (summarizing the circuit split).   For example, the Second Circuit has relied on section 1965(b) as authorizing nationwide service of process. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71-72 (2$^d$ Cir. 1998).   That section provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).   Thus, according to the Second Circuit, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant," and then personal jurisdiction may be exercised over additional nonresident defendants if the "ends of justice so require."   *PT United*, 138 F.3d at 71-72.   By contrast, in relying on section 1965(d) rather than section 1965(b) as the basis for nationwide service of process, the Fourth Circuit "has permitted RICO plaintiffs to sue all Defendants in one forum without any need for a showing that the 'ends of justice' required such an assertion of personal jurisdiction over nonresident defendants."   *Sadighi*, 36 F.Supp.2d at 274; *see also D'Addario*, 264 F.Supp.2d at 387 n. 22 ("[T]he Fourth Circuit seems to have eradicated the 'ends of

process on a RICO defendant in a judicial district where that defendant resides establishes personal jurisdiction, provided that the assertion of jurisdiction comports with due process. *ESAB Grp.*, 126 F.3d at 626 ("[W]here, as here, Congress has authorized nationwide service of process . . . so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.") (internal quotation marks omitted).   Where due process permits the exercise of personal jurisdiction, a defendant can preclude a plaintiff's reliance on the nationwide service of process provision only by showing that the RICO claim is "'wholly immaterial or insubstantial.'" *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 549 (E.D.Va. 2009) (quoting *ESAB Grp.*, 126 F.3d at 629).

Here, it is undisputed that Todd Parriott and Philip Parriott were personally served with process in Nevada, a "judicial district [where they] reside" as per section 1965(d). (*See* ECF Nos. 29-56, 29-57).   Hence, the Parriott Defendants can defeat personal jurisdiction only by showing that due process would be violated or that Plaintiffs' RICO claim is not

---

justice' inquiry by using section 1964(d) to acquire personal jurisdiction."). Hence, there is no need to perform an "ends of justice" inquiry here.

colorable.  *See D'Addario*, 264 F.Supp.2d at 387; *Myers v. Lee*, No. 10-cv-131, 2010 WL 2757115, at *8 (E.D.Va. July 12, 2010).

Because a federal statute confers personal jurisdiction in this case, the Due Process Clause of the Fifth Amendment – rather than that of the Fourteenth Amendment – applies to protect "the liberty interests of [the Parriott Defendants] against unfair burden and inconvenience." *ESAB Grp.*, 126 F.3d at 626.  Where a defendant is located within the United States, "'it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'" *Id.* at 627 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)); *see also D'Addario*, 264 F.Supp.2d at 387 ("The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent.") (internal quotation marks omitted).

In this case, exercising personal jurisdiction over the Parriott Defendants pursuant to section 1965(d) comports with due process.  Although the Parriott Defendants, in arguing for a transfer of the case, contend that they will experience some inconvenience by litigating in Maryland rather than Nevada (ECF No. 39, at 19-22; ECF No. 41, at 17-21), they do not show that a Maryland forum "would be so extremely inconvenient or so unfair

as to outweigh the Congressional policy of permitting the exercise of personal jurisdiction pursuant to RICO's nationwide service of process provisions." *Sadighi*, 36 F.Supp.2d at 274 (citing *ESAB Grp.*, 126 F.3d at 626). Thus, asserting personal jurisdiction over the Parriott Defendants as to Plaintiffs' RICO claim will not violate the Fifth Amendment.

The Parriott Defendants also fail to demonstrate that Plaintiffs' RICO claim is wholly without color. A RICO claim is without color where it is "insubstantial, implausible, . . . or otherwise devoid of merit." *Sadighi*, 36 F.Supp.2d at 271 (internal quotation marks and citations omitted). By contrast, a RICO claim is colorable "if it is arguable and nonfrivolous, whether or not it would succeed on the merits." *Id.* (internal quotation marks and citations omitted).

The Parriott Defendants argue that Plaintiffs' RICO count is "entirely without color" because it fails to state a claim under Rule 12(b)(6). (ECF No. 39, at 14-15; ECF No. 41, at 13). This contention ignores that a claim can be colorable while still failing to satisfy the pleading requirements of the Federal Rules of Civil Procedure. *See D'Addario*, 264 F.Supp.2d at 389 n. 26 (E.D.Va. 2003) (explaining that although a RICO claim was colorable for purposes of section 1965(a), the operative pleading likely required amendment to include "greater specificity" in order to survive a dispositive motion); *cf.*

*Noble Sec.*, 611 F.Supp.2d at 550 n. 22 (distinguishing between the "colorable federal claim" standard that applies to the personal jurisdiction analysis under Rule 12(b)(2) and the "federal claim upon which relief can be granted" standard that applies to a Rule 12(b)(6) motion to dismiss).[8]

In assessing whether a claim is "colorable," courts look to whether a plaintiff pleads a RICO violation by alleging "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as (5) injury in the plaintiff's business or property (6) by reason of the RICO violation. *D'Addario*, 265 F.Supp.2d at 288 (internal quotation marks omitted); *see also Noble Sec.*, 611 F.Supp.2d at 550 (analyzing whether the plaintiff had pled the elements of a RICO violation to determine whether its claim was "colorable"). In Count XIX of the complaint, Plaintiffs allege that the Desert Capital Defendants participated in an enterprise consisting of a "web of shell companies" that collectively engaged in a "lengthy pattern of racketeering activity" to "carry out a criminal Ponzi scheme" through multiple instances of wire, mail, and bank fraud. (ECF

---

[8] *But see Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F.Supp.2d 639, 652 (D.S.C. 2005) (concluding that RICO's nationwide service of process provision did not provide a basis for personal jurisdiction where the RICO claim "must be dismissed under Rule 12(b)(6)"). The *Dtex* court did not address the distinction between the standard for assessing whether a claim is without color and the standard for a Rule 12(b)(6) motion.

No. 2 ¶¶ 287-303).   Plaintiffs further allege this pattern of conduct has lasted "several years" and has affected "hundreds of other investors."   (*Id.* ¶ 293).   Finally, Plaintiffs also aver that this "pattern of fraudulent and criminal misconduct has divested the Swareys of millions of dollars."   (*Id.* ¶ 306). With respect to the threshold showing required to use RICO's nationwide service of process provision (*i.e.*, that the claim is colorable), Plaintiffs' RICO count is "close enough to what is required that it cannot be said to be wholly insubstantial and immaterial."   *D'Addario*, 265 F.Supp.2d at 288 (internal quotation marks omitted).[9]   Thus, personal jurisdiction properly can be asserted over the Parriott Defendants as to Plaintiffs' RICO count.

At this stage, it is also proper to exercise pendent personal jurisdiction in connection with Plaintiffs' state law claims.   When a federal statute authorizes nationwide service of process and the remaining state law claims arise from the same nucleus of operative facts, pendent personal jurisdiction may be exercised to adjudicate state claims that are properly within the court's subject matter jurisdiction.   *ESAB Grp.*, 126 F.3d at 627-28.   Here, the state law claims asserted against the

---

[9] As set forth below, however, Plaintiffs do not allege sufficient *facts* to support a key element of their RICO count, which will be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Parriott Defendants arise out of a common nucleus of operative facts – namely, the three alleged real estate schemes involving the Pebble Creek Project, the Ann Road Project, and the Mid-Bar Property Project.  Thus, pendent personal jurisdiction is proper as to Plaintiffs' state law claims, and a separate personal jurisdiction analysis as to those claims need not be conducted. *See Sadighi*, 36 F.Supp.2d at 274-75; *cf. D'Addario*, 264 F.Supp.2d at 387-88 (E.D.Va. 2003) (explaining that if the federal claim(s) providing the basis for pendent personal jurisdiction "should be dismissed" at a later time, "the state claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists").  The Parriott Defendants' motions to dismiss will be denied to the extent they seek dismissal under Rule 12(b)(2).

   **B.   Venue**

   The Parriott Defendants also seek dismissal under Rule 12(b)(3) for improper venue and argue in the alternative than a transfer to the District of Nevada is warranted.

   In this circuit, when venue is challenged by a motion to dismiss, the plaintiff must establish that venue is proper. *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F.Supp.2d 468, 471 (D.Md. 2002).  "[I]n deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the

plaintiff most strongly can plead them.'"  *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F.Supp.2d 450, 454 (D.Md. 2005) (quoting *Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F.Supp. 381, 385 (D.Md. 1990)).

Because subject matter jurisdiction in this case is not founded "solely on diversity of citizenship," venue is governed by 28 U.S.C. § 1391(b):

> A civil action . . . may, except as otherwise provided by law, be brought only in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

This case satisfies section 1391(b)(2).  The complaint alleges that many of the events giving rise to Plaintiffs' claims occurred in Maryland, including:  (1) the Desert Capital Defendants' advertisement of their "fraudulent financial products" (ECF No. 2 ¶ 25); (2) the negotiation of the terms of

26

the investment agreements between Mr. Swarey and the Desert Capital Defendants' alter egos (*id.* ¶¶ 25, 50); (3) the phone calls made by Todd Parriott and the other Desert Capital Defendants to Mr. Swarey while he was located in Maryland, in which they misrepresented the "true nature" of the transaction involving the Mid-Bar Property (*id.* ¶¶ 221, 224); (4) the FUL Defendants' solicitation of the Swareys through numerous phone calls to Maryland (*id.* ¶ 127); and (5) the signing of the allegedly fraudulent loan application by Mr. Swarey in a Baltimore hotel room (*id.* ¶ 127).

Moreover, it would be inappropriate to transfer this case to the District of Nevada. The relevant statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order "[t]o prevail on a motion to change venue pursuant to § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal quotation marks and citation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002). Mere assertions of

27

inconvenience or hardship, without more, are insufficient to sustain a motion under section 1404(a). *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002); *Helsel*, 198 F.Supp.2d at 712. Instead, a defendant should submit, for example, "affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow*, 232 F.Supp.2d at 499 (citing *Helsel*, 198 F.Supp.2d at 712).

The Parriott Defendants argue that transfer is warranted because, among other things: (1) a substantial part of the events giving rise to Plaintiffs' claims took place in Nevada; (2) the real estate projects in question are located in Nevada; and (3) the convenience of the parties and the witnesses weigh in favor of litigating in Nevada. (ECF No. 39 ¶¶ 36-43; ECF No. 41 ¶¶ 31-41). Todd Parriott specifically avers that "[l]itigating this dispute in Maryland, which is over 2,000 miles from Nevada, would place a significant financial burden on me because I live in Nevada" and that "[t]raveling across the country to Maryland will significantly disrupt my work duties in Nevada." (ECF No. 39-1, T. Parriott Aff. ¶ 84).

The Parriotts also acknowledge, however, that "a plaintiff's choice of forum is ordinarily accorded considerable weight." *Vanderhoef Builders*, 237 F.Supp.2d at 617. It is true that this "weight is lessened . . . when either (1) the chosen forum is not the plaintiff's home, or (2) the chosen forum has

little or no connection to the events giving rise to the litigation." *Tse v. Apple Computer*, Civ. No. 05-2149, 2006 WL 2583608, at *2 (D.Md. Aug. 31, 2006). Here, however, the chosen forum is Plaintiffs' home, and Maryland does have a connection to the events giving rise to the litigation based on the allegations set forth in the complaint. Thus, transfer to Nevada would be inappropriate in this case, and the Parriott Defendants' motion in this regard will be denied.

**C.   Failure to State a Claim**

The Parriott Defendants also move for dismissal of Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). (ECF No. 39, at 23-48; ECF No. 41, at 22-46).

**1.   Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at n. 3. That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or

"naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## 2.    RICO Count As To The Parriott Defendants

Plaintiffs assert claims against the Defendants under RICO subsections (a), (b), (c), and (d).[10]   To state a claim for a substantive violation of RICO, the complaint must set forth facts that, if proven, would establish:   "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

---

[10]   Subsection (a) "is aimed at the use of racketeering proceeds to infiltrate an enterprise."  *Benard v. Hoff*, 727 F.Supp. 211, 214 (D.Md. 1989).  The elements of a subsection (a) claim are:    (1) a receipt of income from a pattern of racketeering activity, and (2) use or investment of this income in an enterprise.   18 U.S.C. § 1962(a); *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 837 (4th Cir. 1990).

Subsection (b) "is aimed at the use of racketeering activity itself (as distinguished from use of illegal proceeds) to acquire or maintain an enterprise."  *Benard*, 727 F.Supp. at 214.   The elements of a subsection (b) claim are:  (1) acquiring or maintaining (2) through a pattern of racketeering activity or through a collection of an unlawful debt (3) an interest in or control of (4) any enterprise (5) engaged in interstate or foreign commerce.  18 U.S.C. § 1962(b).   Additionally, "under § 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991); *see also Field v. GMAC LLC*, 660 F.Supp.2d, 679, 687 (E.D.Va. 2008).

Subsection (c) "is aimed at the use of an enterprise to carry out racketeering activities."  *Benard*, 727 F.Supp. at 214.   The elements of a subsection (c) claim are:   (1) conduct of or participation in (2) any enterprise (3) through a pattern (4) of racketeering activity.  18 U.S.C. § 1962(c); *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

Subsection (d) is aimed at conspiracies to violate subsections (a) through (c) of RICO.  18 U.S.C. § 1962(d).   To allege a subsection (d) claim, a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering."  *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir.), *cert. denied*, 498 U.S. 924 (1990).

*Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).   The statute defines several of the operative terms.   "Enterprise," as set forth in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."   The same statute defines "racketeering activity" as "any act which is indictable" under a number of enumerated criminal provisions.   *Id.* § 1961(1).   A "pattern of racketeering activity," moreover, "requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."   *Id.* § 1961(5).

The Parriott Defendants identify three purported deficiencies in Plaintiffs' RICO count:   (1) failure to plead a sufficient factual basis for the underlying offenses of mail, wire, and bank fraud; (2) failure to allege sufficient facts in support of a "pattern of racketeering activity"; and (3) failure to allege properly the existence of an enterprise.   (ECF No. 39, at 36-45; ECF No. 41, at 35-42).   Because a "pattern of racketeering activity" is "an essential element in any RICO

action," *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989), the Parriott Defendants' second argument is dispositive.

To allege a pattern of racketeering activity, a plaintiff must present facts making it plausible, rather than possible, that: (1) at least two predicate acts occurred within ten years of each other; (2) the predicate acts were related; and (3) the acts "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (citing *Sedima*, 473 U.S. at 496, n. 14). With respect to continuity, the Fourth Circuit has explained:

> Continuity . . . refers either to a closed period of *repeated* conduct, or to past conduct that by its nature projects into the future with a threat of *repetition*. To satisfy the continuity element, a plaintiff must show that the predicates themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity. Significantly, [p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Thus, predicate acts must be part of a prolonged criminal endeavor.

*Menasco*, 886 F.2d at 683-84 (internal quotation marks, citations, and parentheticals omitted) (alteration and emphasis

in original).   In other words, because "Congress contemplated that only a party engaging in widespread fraud would be subject to" the serious consequences available under the statute (*e.g.*, treble damages), the continuity requirement ensures that RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.*   "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Al-Abood ex rel. Al-Abood v. El-I*, 217 F.3d 225, 238 (4th Cir. 2000).

Assessing whether a plaintiff has satisfied the "continuity plus relationship" test requires a fact-specific, common-sense approach at the motion to dismiss stage. *Menasco*, 886 F.2d at 683-84.   Relevant factors to consider include "the number and variety of predicate acts, the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential of multiple distinct injuries." *Pobel v. Hans Christian Yachts, Inc.*, 933 F.Supp. 494, 496 (D.Md. 1996).

Illustrative is *Menasco*, 886 F.2d at 684, where the Fourth Circuit held that the continuity prong was not satisfied because the defendants' purported actions were narrowly directed toward a single fraudulent goal (defrauding two entities of their oil

34

interests), involved one perpetrator, targeted one set of victims, and took place over one year.  Although the plaintiffs alleged that the scheme represented the defendants' "regular way of conducting" business and that the defendants had committed fraudulent acts against "various individuals," the court concluded that the allegations "lack[ed] the specificity needed to show a distinct threat of continuing racketeering activity" because the complaint did not supply any details regarding the ongoing fraud operation or the identity or activity of the other purported victims.  *Id.; see also, e.g., GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (where complaint alleged that the defendants had engaged in a Ponzi scheme to inflate the value of their company before selling it, the plaintiffs failed to plead continuity in an adequate manner because the purported conduct lasted only two years and "was all designed for the single goal of allowing [the defendants] to profit from their interests [in the company]").

Here, Plaintiffs' allegations fail to satisfy the continuity prong of RICO's pattern requirement.  According to the complaint, Defendants' purported actions were narrowly directed towards a single fraudulent goal:  to swindle the Swareys out of their life savings.  The alleged scheme involved a single set of victims (the Swareys), caused a single discrete injury (the Swareys' monetary loss), and lasted under two years

(from January 2008 to sometime in the fall of 2009). Other than Plaintiffs' conclusory allegations that Defendants defrauded "hundreds of other investors" (ECF No. 2 ¶ 293), the complaint offers no facts to support that the alleged scheme stretched beyond the victimization of the Swareys or that the Desert Capital Defendants pose a broader societal threat. Although Plaintiffs characterize Defendants' conduct as a "multi-million dollar Ponzi-scheme" (*id.* ¶ 2), the complaint does not offer any specific factual allegations regarding how the scheme utilized other people's money to pay the Swareys, and Plaintiffs do not identify the other purported victims. There also is no allegation to support a threat of continuing future conduct; to the contrary, Plaintiffs aver that the Desert Capital Defendants ceased all communications with Mr. Swarey in the fall of 2009. (*Id.* ¶ 65).

In their opposition, Plaintiffs point to the following statement by Todd Parriott in a 2008 filing with the United States Securities and Exchange Commission as evidence of the continuous nature of the RICO violation: "[t]he growth of [Desert Capital] depends on our access to external sources of capital. Our profitability depends on our ability to obtain that capital at a cost we can absorb while still generating an attractive risk-adjusted return on the loans we acquire using the proceeds of our financing." (ECF No. 51, at 35).

Plaintiffs' reliance on this statement is misplaced, as it has no apparent relation to the alleged scheme perpetrated against the Swareys and certainly does not demonstrate the type of "distinct threat of continuing racketeering activity" required to satisfy the continuity requirement.  Hence, at bottom, the complaint - even when construed in the light most favorable to Plaintiffs - alleges only a narrow real estate investment scheme that was directed towards a single set of victims and perpetrated through conduct that falls short of constituting "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco*, 886 F.2d at 684. Accordingly, because the complaint does not allege specific factual events in support of the continuity element, Plaintiffs' RICO count against the Parriott Defendants must be dismissed.

### 3.   Leave to Amend

In a single sentence in their oppositions to the Parriott Defendants' motions to dismiss, Plaintiffs contend that they should be given leave to amend the complaint if the motions are granted.  (ECF No. 48, at 19-20; ECF No. 51, at 29-30).

Fed.R.Civ.P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."  The Supreme Court has held that:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant,

> repeated failure to cure deficiencies by
> amendments previously allowed, undue
> prejudice to the opposing party by virtue of
> allowance of the amendment, futility of
> amendment, etc. — the leave sought should,
> as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "However, implicit in this statement is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co. v. Lanham Mach. Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (affirming the district court's denial of a plaintiff's requests for leave to amend that were asserted in briefs opposing the defendant's motion to dismiss; were not accompanied by a proposed amended complaint; and did not contain any indication of what new allegations an amended complaint would contain); *see also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (same); *cf. Gallop v. Cheney*, 642 F.3d 364, 369 (2[d] Cir. 2011) (district court did not err in denying leave to amend and dismissing a claim with prejudice pursuant to Rule 12(b)(6) where there was no indication that the represented plaintiff "could — or would – provide additional allegations that might lead to a different result").

Here, Plaintiffs have not filed a motion for leave to amend in accordance with Local Rule 103.6; have not submitted a proposed amended complaint; and have not otherwise indicated

what new allegations their proposed amended complaint would contain.  Instead, in arguing that they sufficiently alleged the predicate acts of mail, bank, and wire fraud in accordance with the heightened pleading standard set forth in Fed.R.Civ.P. 9(b), the Swareys state – in a conclusory fashion – that "if this Court does not find the pleadings were pled with particular[ity]," leave to amend should be granted.  (ECF No. 48, at 19-20; ECF No. 51, at 29-30).  When liberally construed, the implication of this statement is that Plaintiffs' proposed amended complaint would allege the predicate acts of fraud with greater specificity.  Significantly, however, Plaintiffs do not propose or even allude to any amendments or additional evidence that would supplement their allegations regarding continuity.  Thus, the Swareys fail to provide a sufficient basis for determining whether an amended complaint would be futile, as it is not clear that Plaintiffs would, or could, offer any new allegations to alter the conclusion that the purported scheme "does not . . . warrant RICO treatment." *GE Inv. Private Placement Partners II*, 247 F.3d at 551 (affirming the district court's dismissal of a plaintiff's RICO count for failure to allege continuity, as well as the court's denial of leave to amend).[11]  Hence, Plaintiffs' unsupported, cursory request for leave to amend will be denied.

---

[11]  In *Menasco*, the Fourth Circuit granted leave to the

### 4.   RICO Count As To Defendants Stephenson & Desert Capital

Because Plaintiffs' allegations in support of their RICO count are identical with respect to all of the Desert Capital Defendants, the RICO count as to Desert Capital and Stephenson also is subject to dismissal for failure to allege adequately the continuity requirement.  Even though neither Desert Capital nor Stephenson has affirmatively sought dismissal at this time, they have not waived their right to do so.[12]  Accordingly, the court will *sua sponte* dismiss the RICO count as to all of the Desert Capital Defendants.  *See Hawkins v. Chick*, No. DKC 09-0661, 2009 WL 4017953, at *6-7 (D.Md. Nov. 19, 2009) (dismissing

---

plaintiffs to amend their RICO count with respect to their continuity allegations.  886 F.2d at 685-86.  *Menasco* is distinguishable from the facts presented here.  There, the decision to grant leave to amend was based primarily on timing: the plaintiffs filed their complaint before the Supreme Court issued its decision in *H.J. Inc.*  Because that decision set forth detailed guidance with respect to continuity, the court concluded that the plaintiffs "should be allowed to amend their complaint to try to come within its parameters."  *Id.*  Here, by contrast, the Swareys had the benefit of the guidance from *H.J. Inc.* – a decision that was issued in 1989 and that has been widely interpreted by lower courts – at the time they filed their complaint.

[12] As noted above, Stephenson filed an answer and amended answer to the complaint without moving for dismissal under Rule 12(b)(6).  Although Stephenson did not specifically assert failure to state a claim upon which relief can be granted as an affirmative defense, he has not waived his right to do so.  *See* Fed.R.Civ.P. 12(h)(2) (explaining that the defense of failure to state a claim upon which relief can be granted may be raised as late as trial).  Desert Capital has not yet responded to the complaint due to the automatic bankruptcy stay. (ECF No. 4).

RICO claims *sua sponte* as to all defendants, including those who had not affirmatively sought such relief, where the plaintiff failed to allege a necessary element of a RICO violation).

### 5.   Remaining State Law Claims

Because subject matter jurisdiction in this case is based on Plaintiffs' RICO count, which will be dismissed, questions arise as to (1) whether supplemental subject matter jurisdiction can be exercised over the remaining state law claims, and (2) if so, whether it should be exercised.

Pursuant to 28 U.S.C. § 1367(a), supplemental subject matter jurisdiction may be exercised over "all [nonfederal] claims that are so related to [federal] claims in the action . . . that they form part of the same case or controversy[.]" Here, the remaining state law claims against the Desert Capital Defendants and the FUL Defendants are sufficiently related to the RICO claim to allow for the exercise of supplemental jurisdiction. *See White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993) (supplemental claims "need only revolve around a central fact pattern" shared with the federal claim).

Pursuant to 28 U.S.C. § 1367(c)(3), however, the court has discretion to retain, dismiss, or remand nonfederal claims where, as here, the federal basis of the action is no longer present. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("[W]e conclude that under the authority of

28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.")[13]   Indeed, district courts in the Fourth Circuit "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).   Factors to be considered include the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."   *Id.* (citing *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1998)).

Considering that this case is still in its early stages, it is appropriate to decline to exercise supplemental jurisdiction

---

[13] That the case has been automatically stayed as to Desert Capital REIT, Inc. – the only Defendant who is a Maryland resident and thus the only Defendant who destroys complete diversity under 28 U.S.C. § 1332 – pending its bankruptcy proceedings does not serve to create diversity jurisdiction in this case.   An automatic stay is not tantamount to a dismissal and thus has no bearing on the diversity calculus.   *See, e.g.*, *Reichley v. Abercrombie & Fitch Stores, Inc.*, No. 1:09-CV-838, 2009 WL 5196140, at *2 (W.D.Mich. Dec. 22, 2009) ("Deference for state court jurisdiction requires that a case against a non-diverse party be fully and finally dismissed, and not merely temporarily closed pursuant to the automatic stay imposed by the filing of a bankruptcy petition, before federal diversity jurisdiction may be exercised.").

over Plaintiffs' remaining state law claims.    Instead, those claims will be remanded to the Circuit Court for St. Mary's County for further consideration.[14]

## V.   Conclusion

For the foregoing reasons, the motion to set aside the default entered against the Andrews Defendants will be granted; the motion to strike Defendant Kerry Stephenson's affirmative defenses will be denied as moot; the motions to withdraw as counsel filed by the attorney for Defendants Todd and Phillip Parriott will be granted; and the motions to dismiss Plaintiffs' complaint filed by the Parriott Defendants will be granted in part and denied in part.    Plaintiffs' RICO count will be dismissed as to all defendants, and the case will be remanded to state court.    A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[14] Because the RICO count will be dismissed, there also will no longer be a basis for exercising pendent personal jurisdiction over the Parriott Defendants as to the state law claims, necessitating an analysis of personal jurisdiction under Maryland's long-arm statute.    *See D'Addario*, 264 F.Supp.2d at 387-88 (E.D.Va. 2003) (explaining that if the federal claim(s) providing the basis for pendent personal jurisdiction "should be dismissed" at a later time, "the state claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists").    In light of the decision not to exercise supplemental subject matter jurisdiction over the state law claims and to remand the case, that issue is not reached.